**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| SANDRA FUENTES, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> *vs.* <br><br> ENHANCED RECOVERY SERVICES 2, INC. d/b/a ENHANCED RECOVERY SERVICES; CHARLES GILLEY; KIMBERLY GILLEY; MARK NESTOR; JUDSON PHILLIPS; JOHN HUFFMAN; MARK NONSANT; and DOES 1-25, <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Civil Action No. 1:22-cv-00317 |

---

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR DEBT
COLLECTION PRACTICES ACT AND TEXAS DEBT COLLECTION ACT,
AND DEMAND FOR JURY TRIAL**

---

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff, Sandra Fuentes, individually and on behalf of all others similarly situated, by way of this Complaint against Defendants, Enhanced Recovery Services 2, Inc. d/b/a Enhanced Recovery Services ("ERSI"), Charles Gilley, Kimberly Gilley, Mark Nestor ("Nestor"), Judson Phillips ("Phillips"), John Huffman ("Huffman"), Mark Nonsant ("Nonsant"), and DOES 1-25 ("DOES") (collectively "Defendants"), states:

## I.    NATURE OF THE ACTION

1.    Defendants used unfair, unconscionable, false, deceptive, and misleading practices, and other illegal practices, in connection with their attempts to collect alleged debts from her and other similarly situated Texas consumers by failing to maintain a bond and by collecting debts which are time-barred without disclosing that fact. Plaintiff alleges Defendants' collection practices violate the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-

1692p and Texas Debt Collection Act (TDCA), Tex. Fin. Code § 392, *et seq*.

2.      The FDCPA regulates the behavior of collection agencies who attempt to collect debts asserted to be owed or due another. The United States Congress found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(a) - (e).

3.      The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. In reviewing an FDCPA complaint, courts "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard, assuming that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *McMurray v. ProCollect, Inc*., 687 F.3d 665 (5th Cir. 2012).

4.      To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection practices and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e(1)-(16). Among these *per se* violations are: making false representations concerning the character, amount, or legal status of any debt, 15 U.S.C. § 1692e(2)(A); and the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10).

5.      To prohibit unconscionable and unfair practices, the FDCPA at 15 U.S.C. § 1692f, outlaws the use of unfair or unconscionable means to collect or attempt to collect any

debt and names a non-exhaustive list of certain *per se* violations of unconscionable and unfair collection conduct. 15 U.S.C. §§ 1692f (1)-(8).

6.      The TDCA, like the FDCPA, prohibits debt collectors from using deceptive, coercive, threatening, abusive, and other repugnant practices when collecting a consumer debt. Tex. Bus. & Com. Code Ann § 17.50; *Cushman v. GC Services, L.P.*, 397 Fed. Appx. 24 (5th Cir. 2010) (discussing the "tie-in" provision between the TDCA and deceptive practices Acts).

7.      This case involves an obligation, or an alleged obligation, primarily for personal, family, or household purposes, and arising from a transaction or alleged transaction. As such, this action arises out of "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

8.      Plaintiff, on behalf of herself and others similarly situated, seeks statutory damages, injunctive relief, attorney fees, costs, and all other equitable or legal relief this Court deems appropriate under the FDCPA, TDCA, and other common law or statutory regimes.

## II.      PARTIES

9.      Plaintiff is a natural person.

10.      At all times relevant to this Complaint, Plaintiff was a citizen of Texas, and resided in Travis County, Texas.

11.      ERSI is a for-profit corporation organized under Florida law.

12.      ERSI maintains its principal place of business at 101 Century 21 Drive, Suite 100, Jacksonville, Florida.

13.      At all times relevant to this lawsuit, Charles Gilley was a citizen of, and resided in, Jacksonville, Florida.

14.      At all times relevant to this lawsuit, Kimberly Gilley was a citizen of, and resided in, Orange Park, Florida.

15.     At all times relevant to this lawsuit, Nestor was a citizen of, and resided in, Jacksonville, Florida.

16.     At all times relevant to this lawsuit, Phillips was a citizen of, and resided in, Jacksonville, Florida.

17.     At all times relevant to this lawsuit, Huffman was a citizen of, and resided in, Jacksonville, Florida.

18.     At all times relevant to this lawsuit, Nonsant was a citizen of, and resided in, Clermont, Florida.

19.     Texas Finance Code § 392.101(a) provides "[a] third-party debt collector…may not engage in debt collection unless the third-party debt collector… has obtained a surety bond issued by a surety company authorized to do business in Texas."

20.     Texas Finance Code § 392.101(b)(1) provides that "[t]he third-party debt collector's surety bond must be in favor of any person who is damaged by a violation of [Texas Finance Code § 392, *et seq*.]."

21.     Texas Finance Code § 392.102 provides that "[a] person who claims against a bond for violation of [Texas Finance Code § 392, *et seq*.] may maintain an action against the third-party debt collector…and against the surety."

22.     Texas Finance Code § 392.101(a) provides "[a] third-party debt collector…may not engage in debt collection unless the third-party debt collector… has obtained a surety bond issued by a surety company authorized to do business in Texas."

23.     ERSI has engaged in debt collection in the State Texas during the two years prior to filing this Complaint and continuing to present without having a surety bond issued as required by Texas Finance Code § 392.101.

24.     Plaintiff, and the putative class members she seeks to represent, have been, and continue to be, damaged by ERSI's TDCA violations.

25.     DOES 1-25 are sued under fictitious names as their true names and capacities are yet unknown to Plaintiff. Plaintiff will amend this complaint by inserting the true names and capacities of the DOE defendants once they are ascertained.

26.     DOES 1-25 are natural persons and/or business entities all of whom reside or are located within the United States who personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with, conspired with, engaged in, and oversaw ERSI's violative policies and procedures that are the subject of this Complaint. DOES 1-25 personally control, and engaged in, the illegal acts, policies, and practices used by ERSI and, thus, are personally liable for all wrongdoing alleged in this Complaint.

### III.     JURISDICTION AND VENUE

27.     This Court's jurisdiction arises under 15 U.S.C. § 1692k(d), and 28 U.S.C. §§ 1331 and 1337.

28.     Supplemental jurisdiction for Plaintiff's state law claims arises under 28 U.S.C. § 1367.

29.     Venue is appropriate in this federal district pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims occurred within this federal judicial district, and because the named Defendants regularly transacts business within this federal judicial district and, therefore, reside in this federal judicial district within the meaning of 28 U.S.C. § 1391(b) and (c).

### IV.     FACTUAL ALLEGATIONS

30.     ERSI is regularly engaged in the collection of defaulted consumer debts.

31.     ERSI is a business whose principal purpose is the collection of defaulted consumer debts owed to others.

32.     ERSI regularly uses instruments of interstate commerce, including the mails, telephone, and internet when attempting to collect defaulted consumer debts.

33.     Charles Gilley is a principal owner, member, officer, director, shareholder, and/or managing partner of ERSI.

34.     Charles Gilley attempts to collect defaulted consumer debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, internet, and other means of interstate commerce.

35.     Charles Gilley personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, oversaw, and profited from the illegal policies and procedures used by himself and other ERSI employees complained of herein.

36.     Kimberly Gilley is a principal owner, member, officer, director, shareholder, and/or managing partner of ERSI.

37.     Kimberly Gilley attempts to collect defaulted consumer debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, internet, and other means of interstate commerce.

38.     Kimberly Gilley personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, oversaw, and profited from the illegal policies and procedures used by herself and other ERSI employees complained of herein.

39.     Nestor is a principal owner, member, officer, director, shareholder, and/or managing partner of ERSI.

40.     Nestor attempts to collect defaulted consumer debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, internet, and other means of interstate commerce.

41.     Nestor personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, oversaw, and profited from the illegal policies and procedures used by himself and other ERSI employees complained of herein.

42.     Phillips is a principal owner, member, officer, director, shareholder, and/or managing partner of ERSI.

43.     Phillips attempts to collect defaulted consumer debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, internet, and other means of interstate commerce.

44.     Phillips personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, oversaw, and profited from the illegal policies and procedures used by himself and other ERSI employees complained of herein.

45.     Huffman is a principal owner, member, officer, director, shareholder, and/or managing partner of ERSI.

46.     Huffman attempts to collect defaulted consumer debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, internet, and other means of interstate commerce.

47.     Huffman personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, oversaw, and profited from the illegal policies and procedures used by himself and other ERSI employees complained of herein.

48.     Nonsant is a principal owner, member, officer, director, shareholder, and/or managing partner of ERSI.

49.     Nonsant attempts to collect defaulted consumer debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, internet, and other means of interstate commerce.

50.     Nonsant personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, oversaw, and profited from the illegal policies and procedures used by himself and other ERSI employees complained of herein.

51.     Plaintiff allegedly incurred a financial obligation to SmartPay Leasing, Inc., ("SmartPay") for personal, family, and household purposes ("Debt")—namely, cellular telephone equipment.

52.     After Plaintiff failed to make her regular installment payment when it was due the Debt fell into default on September 16, 2014.

53.     On or before, September 29, 2021, the Debt's current owner either directly or through intermediate transactions, assigned, placed, or transferred it to ERSI for collection.

54.     ERSI contends the Debt is in default.

55.     On September 29, 2021, ERSI sent Plaintiff an email ("9/29/21 Email").

56.     A true copy of the 9/29/21 Email is attached as *Exhibit A*.

57.     *Exhibit A* refers to the Debt

58.     *Exhibit A* was sent to Plaintiff in an attempt to collect the Debt.

59.     *Exhibit A* is the first communication ERSI sent Plaintiff regarding the Debt.

60.     *Exhibit A* fails to identify ERSI by its true business name.

61.     *Exhibit A* fails to clearly indicate ERSI's name.

62.     *Exhibit A* fails to provide ERSI's street address or post office box.

63.     *Exhibit A* fails to provide ERSI's telephone number.

64.     *Exhibit A* demands a response to a place other than ERSI's or the creditor's street address or post office box.

65.     Under Chapter 16.004(a)(3) of the Texas Civil Practice & Remedies Code, a lawsuit for breach of contract must be filed not later than four years after the day the cause of

action accrues.

66.     As of September 29, 2021, over 7 years had passed since the Debt was in default.

67.     **Exhibit A** is false, deceptive, and misleading and misleading to unsophisticated consumers because it fails to disclose the Debt is time-barred debt and unenforceable.

68.     **Exhibit A** falsely states that ERSI "reports debts to the credit bureaus on behlf of the creditor after 90 days if the account is not paid in full *or* there is no *vaild* dispute on the account."

69.     Plaintiff did not understand what ERSI would consider a "*vaild* dispute on the account" and, therefore, did not dispute the Debt.

70.     Plaintiff did not understand how she could provide a written dispute regarding the Debt because **Exhibit A** failed to provide any address or other instruction for her to mail such a dispute or to whom it should it should be sent.

71.     The statement in **Exhibit A**, that ERSI "reports debts to the credit bureaus on behlf of the crediotr after 90 days if the account is not paid in full *or* there is no *vaild* dispute on the account," contradicts and overshadows Plaintiff's 30-day validation and dispute rights.

72.     The Subject of **Exhibit A** falsely states it is an "URGENT COLLECTION from Enhanced Recovery Services" (Emphasis in original).

73.     The Subject of **Exhibit A** creates a false sense of urgency and contradicts and overshadows Plaintiff's 30-day validation and dispute rights regarding the Debt.

74.     Neither ERSI or the Debt's creditor has any legal basis to file a lawsuit against Plaintiff or other similarly situated Texas consumers to collect defaulted debts that are more than four years old, as those debts are legally non-enforceable.

75.     ERSI regularly attempts to collect defaulted consumer debts on which the statute of limitations has expired.

76.    *Exhibit A* fails to disclose the Debt was barred by the statute of limitations and no longer legally enforceable.

77.    *Exhibit A* fails to disclose that neither the creditor nor ERSI will sue her to collect the Debt.

78.    *Exhibit A* does not provide any information regarding when the Debt was incurred or the default date.

79.    ERSI regularly sends Texas consumers communications, including the form of *Exhibit A*, to collect debts whose statute of limitations expired without disclosing that fact.

80.    It is Defendants' policy and practice to send Texas consumers communications, including the form of *Exhibit A*, to collect debts whose statute of limitations expired without disclosing that fact.

81.    *Exhibit A* is false, deceptive, and misleading and misleading to unsophisticated consumers because it fails to disclose that any partial payment on the Debt could reinstate the applicable statute of limitations.

82.    Plaintiff understood *Exhibit A*, as would an unsophisticated consumer, that the Debt remained legally enforceable and that she continued to have a legal obligation to pay it.

83.    Plaintiff understood *Exhibit A*, as would an unsophisticated consumer, that she might be sued if she did not pay the Debt or call ERSI to make arrangements.

84.    Neither ERSI or the Debt's creditor has any legal basis to file a lawsuit against Plaintiff or other similarly situated Texas consumers to collect defaulted debts that are more than four years old, as those debts are legally non-enforceable.

85.    Plaintiff understood *Exhibit A*, as would an unsophisticated consumer, that ERSI would report the Debt to credit reporting agencies "if the account is not paid in full *or* there is no *vaild* dispute on the account."

86.     Neither ERSI or the Debt's creditor has any legal basis to report the Debt to a credit reporting agency.

87.     Plaintiff was alarmed, confused, misled, and worried when she received *Exhibit A*, as an unsophisticated consumer would be, and therefore she sought the advice of an attorney because she wanted to satisfy her legal obligations and avoid being sued or credit reported.

88.     The Federal Trade Commission has determined that "Most consumers do not know their legal rights with respect to collection of old debts past the statute of limitations.... When a collector tells a consumer that she owes money and demands payment, it may create the misleading impression that the collector can sue the consumer in court to collect that debt." (*See* http://www.ftc.gov/opa/2012/01/asset.shtm).

89.     In early 2012, the FTC entered into a consent decree with Asset Acceptance requiring that it disclose to consumers when it is attempting to collect debts that are barred by the statute of limitations. *United States of America (For the Federal Trade Commission) v. Asset Acceptance, LLC*, Case No. 8:12-cv-182-T-27EAJ (M.D.Fla.).

90.     On October 1, 2012, the Consumer Financial Protection Bureau, which has taken over much of the FTC's enforcement responsibility and has been granted rule-making authority with respect to debt collection, the Federal Deposit Insurance Corporation, the Federal Reserve Board, and the Office of the Comptroller of the Currency entered into consent orders with three American Express-related entities requiring disclosure that debts they attempt to collect were time-barred. 2012-CFPB-0002; 2012-CFPB-0003; 2012-CFPB-0004. The orders require that "the Bank shall continue to provide disclosures concerning the expiration of the Bank's litigation rights when collecting debt that is barred by the applicable state statutes of limitations...." (2012-CFPB-0002, p. 6 of 35, 2012-CFPB-0003, p. 5 of 28).

91.     The October 1, 2012 orders further require disclosure of "all material conditions, benefits and restrictions concerning any offer of settlement. . . ." (2012-CFPB-0002, p. 7 of 35, 2012-CFPB-0003, p. 6 of 28). Thus, they recognize that "settlement offers" that fail to disclose material information may be misleading.

92.     On January 30, 2013, the FTC issued its report, *The Structure and Practices of the Debt Buying Industry*, available at http://www.ftc.gov/os/2013/01/ debtbuyingreport.pdf. The report reaffirms its position in the *United States of America v. Asset Acceptance, LLC*, No. 8:12-cv-182-T-27EAJ (M.D. Fla. 2012), *American Express Centurion Bank* (FDIC-12-315b, FDIC-12-316k, 2012-CFPB-0002), *American Express Bank, FSB* (2012-CFPB-0003) and *American Express Travel Company, Inc.* (2012-CFPB-0004) cases, that a defendant may violate the FDCPA by sending a collection letter demanding payment of a time barred debt without disclosing that the debt was time barred.

93.     The report cites to a study (Timothy E. Goldsmith & Natalie Martin, *Testing Materiality Under the Unfair Practices Acts: What Information Matters When Collecting Time-Barred Debts?*, 64 Consumer Fin. L.Q. Rep. 372 (2010)) that establishes the disclosure that a debt is time barred in a debt collection letter is material to the consumer.

94.     Courts have also held a debt collector's "settlement" offer, and offers to "resolve," made to consumers on a time-barred debt is misleading. *See e.g., Daugherty v. Enhanced Recovery Services 2,* Inc., 836 F.3d 507 (5th Cir. 2016); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014); and *Holzman v. Malcolm S. Gerald & Assocs., Inc.*, 920 F.3d 1264 (11th Cir. 2019).

95.     The individual Defendants directly authorized, created, instituted, implemented, and controlled ERSI's violative policies and procedures that are the subject of this class action.

## V.   CLASS ALLEGATIONS

96.     Plaintiff brings this action individually and as a class action on behalf of all other persons similarly situated pursuant to Fed. R. Civ. P. 23.

97.     Plaintiff seeks to certify two Classes, each with a subclass.

98.     Subject to discovery and further investigation which may cause Plaintiff to modify the class definition to be more or less inclusive, she defines the "Collection Class" to include:

> All natural persons with a Texas address from whom ERSI sought to collect a debt, between April 5, 2020 and April 26, 2022, by calling or sending any form of written communication.

Plaintiff defines a "Collection Subclass" to include:

> Each person who is a Collection Class member but whose collection activity by ERSI took place between April 5, 2021 and April 26, 2022.

99.     Subject to discovery and further investigation that may cause Plaintiff to modify the class definition to be more or less inclusive, she defines a "Communication Class" to include:

> All natural persons with a Texas address to whom ERSI sent a written communication to collect a debt, in the form of ***Exhibit A***, between April 5, 2020 and April 26, 2022.

Plaintiff defines a "Communication Subclass" to include:

> Each person who is a Communication Class member but whose written communication, in the form of ***Exhibit A***, was sent by ERSI April 5, 2021 and April 26, 2022.

100.    The Classes and Subclasses exclude each person who, prior to the date this action is certified to proceed as a class action, either (a) died, (b) obtained a discharge in bankruptcy, (c) commenced an action in any court against Defendants alleging a violation of the FDCPA or TDCA, or (d) signed a general release of claims against ERSI. The Class also excludes Plaintiff's counsel, or an employee or family member of her counsel.

101.    Based on discovery and further investigation (including, but not limited to, disclosure of class size and net worth), Plaintiff may, in addition to moving for class certification using modified definitions of the Classes and Claims, seek class certification only as to particular issues as permitted under Fed. R. Civ. P. 23(c)(4).

102.    Each Class member's identity is ascertainable from ERSI's business records.

103.    This action is brought, and may properly be maintained as, a class action under Fed. R. Civ. P. 23(a) because there is a well-defined community interest in the litigation in that:

103.01.    ***Numerosity***. The Collection Class and Subclass members are so numerous and geographically disbursed that joinder is impractical because there are more than 40 such Class and Subclass members.

103.02.    ***Numerosity***. The Communication Class and Subclass members are so numerous and geographically disbursed that joinder is impractical because there are more than 40 such Class and Subclass members.

103.03.    ***Commonality***. Common questions of law and fact exist as to all Collection Class and Subclass members, the principal issues are: whether Defendants' conduct, as described above, was the same or substantially similar with respect to Defendants' attempts to collect debts from the Plaintiff and Class members; and whether such conduct violated the FDCPA and TDCA.

103.04.    ***Commonality***. Common questions of law and fact exist as to all Communication Class and Subclass members, the principal issues are: whether Defendants' conduct, as described above, was the same or substantially similar regarding Defendants' attempts to collect debts from the Plaintiff and Class members; and whether such conduct violated the FDCPA and TDCA.

103.05.   *Typicality*. Plaintiff's claims are typical of Class and Subclass members'
claims because the claims arise from Defendants' standardized course of
conduct as set forth in the *Factual Allegations*.

103.06.   *Typicality*. Plaintiff's claims are typical of Communication Class and
Subclass members' claims because the claims arise from Defendants'
standardized course of conduct as set forth in the *Factual Allegations*.

103.07.   *Adequacy*. Plaintiff will fairly and adequately protect Class members'
interests because her interests are not averse to absent class members and
she is committed to vigorously litigating this matter. Plaintiff retained
counsel experienced in handling consumer lawsuits, complex legal issues,
and class actions.

104.   Certification of a Class under Fed. R. Civ. P. 23(b)(2) Plaintiff and the Classes
may obtain injunctive relief under Tex. Fin. Code § 392.403(a)(1) upon the Court's
determination that Defendants: *(i)* violated Tex. Fin. Code § 392.101 by engaging in debt
collection without obtaining a surety bond; or *(ii)* violated the TDCA by sending written
communications to Texas consumers in the form of *Exhibit A*.

105.   This action may also be maintained as a hybrid class action under
Fed. R. Civ. P. 23(b)(3) because the questions of law and fact common to the Collection Class,
and all Sub-Class members, predominate over questions affecting any individual member, and a
class action is superior to other available methods for the fair and efficient adjudication of the
controversy. The individual joinder of all Collection Class members, and all Subclass members,
is impracticable, class action treatment will permit a large number of similarly situated persons
to efficiently prosecute their common claims in a single forum without unnecessary duplication
of effort and expense that individual actions engender, an important public interest is served by

addressing the matter as a class action, substantial expenses to the litigants and to the judicial system will be realized, and difficulties are unlikely in the management of a class action.

## VI.    COUNT ONE: VIOLATION OF THE FDCPA

106.    The Factual Allegations are incorporated by reference.

107.    ERSI is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

108.    Charles Gilley is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

109.    Kimberly Gilley is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

110.    Nestor is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

111.    Phillips is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

112.    Huffman is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

113.    Nonsant is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

114.    The Debt is a "debt" within the meaning of 15 U.S.C. § 1692a(5).

115.    Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

116.    *Exhibit A* is a "communication" within the meaning of 15 U.S.C. § 1692a(2).

117.    Defendants violated the FDCPA with respect to the Plaintiff and Collection Subclass members by collecting debts that they are legally prohibited from collecting without first obtaining a surety bond and filing it with the Texas Secretary of State, as prescribed by Tex. Fin. Code § 392.101, in violation of 15 U.S.C §§ 1692e and 1692e(5), and 1692f.

118.    Defendants' FDCPA violations with respect to sending written communications in the form of *Exhibit A* include, but are not limited to:

118.01.    Using false, deceptive, and misleading representations and means in connection with the collection of any debt in violation of 15 U.S.C. § 1692e;

118.02.    Falsely representing the character, amount, or legal status of any debt, in violation of 15 U.S.C. § 1692e(2)(A);

118.03.    Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, in violation of 15 U.S.C § 1692e(8);

118.04.    Using false representations and deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10);

118.05.    Using any business, company, or organization name other than the true name of the debt collector's business, company, or organization in violation of 15 U.S.C § 1692e(14);

118.06.    Using unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f; and

118.07.    Contradicting and/or overshadowing a consumer's validation and dispute rights in violation of 15 U.S.C. §§ 1692g(a) and 1692g(b).

## VII.    COUNT TWO: VIOLATION OF THE TDCA

119.    The Factual Allegations are incorporated by reference.

120.    ERSI is engaged in the act and/or practice of "debt collection" within the meaning of Tex. Fin. Code § 392.001(5).

121.    Charles Gilley is engaged in the act and/or practice of "debt collection" within the meaning of Tex. Fin. Code § 392.001(5).

122.    Kimberly Gilley is engaged in the act and/or practice of "debt collection" within the meaning of Tex. Fin. Code § 392.001(5).

123.    Nestor is engaged in the act and/or practice of "debt collection" within the meaning of Tex. Fin. Code § 392.001(5).

124.    Phillips is engaged in the act and/or practice of "debt collection" within the meaning of Tex. Fin. Code § 392.001(5).

125.    Huffman is engaged in the act and/or practice of "debt collection" within the meaning of Tex. Fin. Code § 392.001(5).

126.    Nonsant is engaged in the act and/or practice of "debt collection" within the meaning of Tex. Fin. Code § 392.001(5).

127.    ERSI is a "debt collector" as defined by Tex. Fin. Code § 392.001(5).

128.    Charles Gilley is a "debt collector" as defined by Tex. Fin. Code § 392.001(5).

129.    Kimberly Gilley is a "debt collector" as defined by Tex. Fin. Code § 392.001(5).

130.    Nestor is a "debt collector" within the meaning of Tex. Fin. Code § 392.001(5).

131.    Phillips is a "debt collector" within the meaning of Tex. Fin. Code § 392.001(5).

132.    Huffman is a "debt collector" within the meaning of Tex. Fin. Code § 392.001(5).

133.    Nonsant is a "debt collector" within the meaning of Tex. Fin. Code § 392.001(5).

134.    ERSI is a "third-party debt collector" as defined by Tex. Fin. Code § 392.001(7).

135.    Charles Gilley is a "third-party debt collector" within the meaning of Tex. Fin. Code § 392.001(7).

136.    Kimberly Gilley is a "third-party debt collector" within the meaning of Tex. Fin. Code § 392.001(7).

137.    Nestor is a "third-party debt collector" within the meaning of Tex. Fin. Code § 392.001(7).

138.    Phillips is a "third-party debt collector" within the meaning of Tex. Fin. Code § 392.001(7).

139.    Huffman is a "third-party debt collector" within the meaning of Tex. Fin. Code § 392.001(7).

140. Nonsant is a "third-party debt collector" within the meaning of Tex. Fin. Code § 392.001(7).

141. The Debt is a "consumer debt" as defined by Tex. Fin. Code § 392.001(2).

142. The Debt is a "charged-off debt" as defined by Tex. Fin. Code § 392.307(1).

143. Plaintiff is a "consumer" within the meaning of Tex. Fin. Code § 392.001(1).

144. Defendants violated the TDCA with respect to Plaintiff and the Class members.

145. Such TDCA violations with respect to *Exhibit A* includes, but is not limited to:

145.01. Threatening to take an action prohibited by law, in violation of Tex. Fin. Code § 392.301(a)(8);

145.02. Using a name other than the true business or professional name or the true personal or legal name of the debt collector while engaged in debt collection, in violation of Tex. Fin. Code § 392.304(a)(1)(A);

145.03. Using a written communication that fails to indicate clearly the name of the debt collector and the debt collector's street address or post office box and telephone number if the written notice refers to a delinquent consumer debt, in violation of Tex. Fin. Code § 392.304(a)(6);

145.04. Using a written communication that demands a response to a place other than the debt collector's or creditor's street address or post office box, in violation of Tex. Fin. Code § 392.304(a)(7);

145.05. Misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding, in violation of Tex. Fin. Code § 392.304(a)(8);

145.06. Falsely representing the status or nature of services rendered by the debt collector or debt collector's business, in violation of Tex. Fin. Code

§ 392.304(a)(14);

145.07.   Using a false representation or deceptive means to collect a debt in violation of Tex. Fin. Code § 392.304(a)(19); and

145.08.   Failing to provide consumers notice required by Tex. Fin. Code § 392.307(c).

146.   Additionally, Defendants violated Tex. Fin. Code § 392.101 by engaging in debt collection in the State of Texas without obtaining a surety bond issued by a surety company and filing it with the Texas Secretary of State as prescribed by the TDCA.

147.   Defendants' illegal conduct invaded Plaintiff's rights which are protected by the TDCA, the invasion of which caused an injury-in-fact.

## VIII.   PRAYER FOR RELIEF.

148.   WHEREFORE, Plaintiff respectfully requests the Court enter judgment in her favor and against Defendants, jointly and severally, as follows:

A.   *With respect to Count One:*

148.01.   Certifying that this action may be maintained as a class action under Fed. R. Civ. P. 23 including defining the claims of the Collection Class and Subclass, and Communication Class and Subclass, and appointing Plaintiff to represent the Classes and her attorneys as Class counsel;

148.02.   Awarding Plaintiff and all Subclass members such actual damages as proven under 15 U.S.C. § 1692k(a)(1), including disgorgement of all monies collected from Texas residents during the relevant time period;

148.03.   Awarding Plaintiff statutory damages under 15 U.S.C. § 1692k(a)(2)(A) and § 1692k(a)(2)(B)(i);

148.04.   Awarding all Subclass members statutory damages under 15 U.S.C.

§ 1692k(a)(2)(B)(ii);

148.05.   Awarding Plaintiff an incentive payment for her services to the

Subclasses in an amount the Court determines after judgment is entered

in favor of each Subclass;

148.06.   Adjudging this action is a successful action under 15 U.S.C.

§ 1692k(a)(2)(B)(3) and awarding reasonable attorneys' fees including

litigation expenses; and

148.07.   For such other and further relief the Court determines is just and proper.

**B.    *With respect to Count Two:***

148.08.   Certifying this action to be maintained as a class action under

Fed. R. Civ. P. 23 including defining the claims of the Collection Class

and Subclass, and Communication Class and Subclass, and appointing

Plaintiff as Class representative and her attorneys as Class counsel;

148.09.   Awarding injunctive relief under Tex. Fin. Code § 392.403(a)(1) to

restrain Defendants from collecting debts in the State of Texas and

from committing further TDCA violations;

148.10.   Awarding Plaintiff and each Collection Class Member statutory

damages under Tex. Fin. Code § 392.403(e) for each violation of Tex.

Fin. Code § 392.101 committed during the Class period;

148.11.   Awarding such actual damages as may be proven to Plaintiff and

members of the Collection Class under Tex. Fin. Code § 392.403(a)(2)

including disgorgement of all monies collected from the Collection

Class members during the relevant time period;

148.12.   Awarding Plaintiff an incentive payment for services to the Classes in an amount the Court determines after judgment is entered;

148.13.   Adjudging Plaintiff successfully maintained an action under Tex. Fin. Code § 392.403(a), and awarding reasonable attorney's fees and costs under Tex. Fin. Code § 392.403(b); and

148.14.   For such other and further relief the Court determines is just and proper.

### IX.    JURY DEMAND.

149.    Demand is hereby made for trial by jury.


Dated: April 5, 2022                          Respectfully submitted,

*s/ Andrew T. Thomasson*
Andrew T. Thomasson (NJ Bar No. 048362011)
Francis R. Greene (IL Bar No. 6272313)
Benjamin T. Trotter (TX Bar No. 24082567)
THOMASSON PLLC
16414 San Pedro Avenue, Suite 700
San Antonio, TX 78232-2272
Telephone: (973) 312-0774
Facsimile:  (973) 559-5779
Email: Andrew@Thomassonpllc.com
Email: Francis@Thomassonpllc.com
Email: Ben@Thomassonpllc.com

Brent A. Devere (TX Bar No. 00789256)
LAW OFFICES OF BRENT A. DEVERE
1411 West Avenue, Suite 200
Austin, Texas 78701
Telephone: (512) 457-8080
Facsimile:  (512) 457-8060
Email: BDevere@1411west.com

*Attorneys for Plaintiff, Sandra Fuentes*